NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 8

No. 24-AP-129

In re United Auto Workers, Local 2322            Supreme Court
(University of Vermont, Appellant)

                                            On Appeal from
                                            Labor Relations Board

                                            December Term, 2024

David Boulanger, Acting Chair

Meghan E. Siket, Assistant General Counsel, Burlington, and Nicholas DiGiovanni of Morgan, Brown & Joy, Boston, Massachusetts, for Appellant.

Catherine A. Terrell of Pyle Rome Ehrenberg PC, Brattleboro, and James A.W. Shaw and Kyle A. Berner of Segal Roitman LLP, Boston, Massachusetts, for Appellee.


PRESENT: Reiber, C.J., Eaton, Carroll and Cohen, JJ., and Johnson, J. (Ret.), Specially Assigned


¶ 1. **CARROLL, J.** The University of Vermont appeals from a Vermont Labor Relations Board decision concluding that predoctoral fellows and trainees are employees for purposes of the State Employees Labor Relations Act (SELRA). We reverse and remand for further consideration of the issue.

¶ 2. Petitioner, United Auto Workers, Local 2322, filed a petition with the Board seeking to represent a bargaining unit of select graduate students at the University composed of "[a]ll full-time and regular part-time graduate teaching assistants, graduate research assistants, graduate assistants, pre-doctoral trainees, pre-doctoral trainees/fellows, and all other graduate students in other titles who are employed in an academic position." The University objected,

arguing that none of the petitioned-for individuals were employees under the SELRA. On appeal, the University only challenges the Board's conclusion as to the employee status of predoctoral fellows and trainees.

¶ 3.  After a three-day hearing, the Board issued a final order in which it made the following factual findings relevant to predoctoral fellows and trainees, none of which are directly challenged on appeal.[1]  Approximately 1700 students are engaged in graduate studies at the University.  Approximately two-thirds of these students are pursuing a master's degree and one-third are pursuing a doctorate.  The University contains ten schools and colleges and offers about twenty-six Ph.D. programs and fifty-six master's-degree programs.  Although not all programs have a teaching requirement, graduate students in Ph.D. programs have a teaching requirement. Of the 1700 graduate students, fifty-seven individuals were predoctoral fellows and trainees in the fall of 2023.

¶ 4.  The University's graduate college oversees the predoctoral fellows and trainees. Graduate students are not required to hold one of the positions in the proposed bargaining unit and most students at the University are "self-funded."  Fellowships have both external and internal funding sources.  Predoctoral fellows apply for external fellowships directly.  The fellowship award is made to the individual student, and they carry that funding with them, although the University administers the funds.  Predoctoral fellows may be required to engage in teaching or research and may have additional requirements beyond their academic degree requirements, such as summer enrollment and research.  Students are appointed as predoctoral trainees rather than fellows when their stipend is paid from a training grant awarded to the

---

[1]  The Board adopted the term "assistantship" when referring to the group of petitioned-for individuals collectively.  At times, the Board also used the term "graduate assistantship," and it is unclear whether these findings always include predoctoral fellows and trainees.  We accordingly interpret the factual findings related to predoctoral fellows and trainees to be those in which the Board used the term "assistantship(s)" or referred to the predoctoral fellows and trainees specifically.

University as opposed to the individual student. Typically, trainees are required to complete a specific training program.

¶ 5. Several students testified before the Board regarding their experiences in positions within the proposed unit. One student was a predoctoral trainee as part of the Quantitative and Evolutionary STEM Training (QuEST) program during his first and third year at the University. The Board found that as part of this program, he had to complete an internship outside of academia, participate in training, and attend professional development seminars. He had to adhere to specific requirements of the program to receive funding. During his third year, he interned for a federal laboratory.

¶ 6. Another student was a predoctoral trainee with the National Science Foundation QuEST program. She was required to dedicate twenty hours per week to the traineeship. Her requirements included undergoing training, completing an internship outside of academia, interacting with different disciplines, and participating in professional development. She had to adhere to specific requirements of the QuEST program to receive funding. She was supervised by her faculty advisor and other faculty helped her comply with the program's requirements. She received tuition reimbursement and health insurance. She also held an internal fellowship, supervised by her academic advisor, for which she received compensation through the University's payroll system.

¶ 7. Predoctoral fellows and trainees are not permitted to engage in other compensated efforts at the University unless they receive permission from the graduate college. Fellows and trainees are required to pay income taxes; however, they do not receive W-2s and the University does not withhold taxes from their stipend payments.

¶ 8. Based on these findings, the Board concluded that the predoctoral fellows and trainees were "employees" of the University such that they were entitled to "the right to self-

3

organization" under the SELRA. 3 V.S.A. § 903(a). The Board first recognized the term "employee" is broadly defined under the SELRA as "a State employee defined by subdivision (5)" of § 902. Id. § 902(4). Subdivision (5) in turn defines "state employee" in relevant part as "any individual employed on a permanent or limited-status basis by the State of Vermont, the Vermont State Colleges, the University of Vermont, the State's Attorney's offices, or as a full-time deputy sheriff paid by the State."[2] The Board, explaining that the term "employed" is not further defined in the statute, adopted the ordinary dictionary definition of employee, which it described as a person "who provide[s] work to someone for pay" or "any person who works for another in return for financial or other compensation."

¶ 9. Pursuant to this definition, the Board concluded all individuals in the proposed bargaining unit were employees because they work for the University. The Board also concluded predoctoral fellows and trainees should not be excluded from the bargaining unit because they "provide a service, work, or effort, for which they are compensated or paid by the University and are supervised [or] monitored in performance of such efforts."[3] It therefore granted the petition and ordered a secret ballot election. See id. § 941(g).

¶ 10. The University moved for reconsideration, arguing the Board did not specifically address the employee status of predoctoral fellows and trainees in its order. The Board denied the motion, reiterating it had concluded that all the individuals in the proposed unit were

---

[2] "State employee" also "includ[es] permanent part-time employees." 3 V.S.A. § 902(5). The University argued below that graduate students are only temporary employees. The Board rejected this argument, and the University does not challenge this conclusion on appeal. The statute also excludes individuals from the definition of "State employee" who the Board determines, after a hearing, are "in a position that is so inconsistent with the spirit and intent of this chapter as to warrant exclusion." Id. § 902(5)(J). As an alternative argument, the University argued below that this exclusion should apply as to all individuals in the bargaining unit because they are students, and the Board rejected this argument. The University does not challenge this conclusion on appeal. The statute also lists ten other exclusions from the definition of employee, none of which are relevant here. See id. § 902(5).

[3] We do not address the remainder of the Board's order not challenged on appeal.

employees, including predoctoral fellows and trainees, because they work for the University and that predoctoral fellows and trainees should not be excluded from the bargaining unit. An election was held in March 2024. The Board certified the election in April 2024. The University appealed challenging only the Board's conclusion that predoctoral fellows and trainees are employees under the SELRA.

¶ 11. We first address petitioner's argument that the University waived any challenge to the employee status of predoctoral fellows and trainees by failing to properly raise its objection in response to the bargaining-unit petition under 3 V.S.A. § 941(c)(2)(A)(i). That provision states: "An employer shall, not more than seven business days after receiving a copy of the petition, file any objections to the appropriateness of the proposed bargaining unit and raise any other unit determination issues with the Board." Id. In its timely filed objection, the University primarily argued that all the individuals in the proposed bargaining unit were not employees under the SELRA and that the petition should therefore be dismissed in its entirety. Alternatively, the University argued that "should the Board rule that the petitioned students are employees and entitled to unionize, the University would contend that the following should be excluded from any unit," and provided a list including predoctoral fellows and trainees. Petitioner submits this latter argument related to whether the challenged individuals were appropriately considered part of the bargaining unit's community of interest and did not preserve the claim the University now raises on appeal, which is that the Board erred in concluding predoctoral fellows and trainees are employees.

¶ 12. We conclude the University's primary argument sufficiently alerted the Board that the University was objecting to the employee status of all individuals in the proposed bargaining unit, including predoctoral fellows and trainees. It therefore preserved the argument for appeal. See Pratt v. Pallito, 2017 VT 22, ¶ 16, 204 Vt. 313, 167 A.3d 320 ("[T]o properly

preserve an issue, a party must present the issue to the administrative agency with specificity and clarity in a manner which gives the [agency] a fair opportunity to rule on it." (second alteration in original) (quotation omitted)). The fact that the University raised an alternative contingent argument concerning the appropriateness of including predoctoral fellows and trainees in the proposed bargaining unit does not mean that it waived its primary argument. Petitioner offers no authority to support its claim that the University was required to specifically object to the employee status of predoctoral fellows and trainees "as a disjunctive alternative to its general objection to the employee status" of all members in the proposed bargaining unit.

¶ 13. Having concluded the University's argument was properly raised before the Board, we now address whether the Board erred in concluding predoctoral fellows and trainees are employees under the SELRA. Our "review of the Board's decision is highly deferential and is limited to evaluating whether the evidence supports the Board's factual findings, and whether those findings, taken as a whole, justify the conclusions of law." In re N.E. Police Benevolent Ass'n, 2016 VT 67, ¶ 8, 202 Vt. 318, 148 A.3d 1002 (quotation omitted). We will affirm if the findings, "taken as a whole, justify the Board's ultimate conclusion." In re Welch, 2020 VT 72, ¶ 10, 213 Vt. 92, 239 A.3d 235.

¶ 14. On appeal, the University is not challenging the Board's interpretation of the term "employee" under the SELRA or the Board's specific factual findings. The University argues the Board erred in concluding that predoctoral fellows and trainees are employees under the SELRA. Our review is thus limited to whether the Board's factual findings support the Board's conclusion that predoctoral fellows and trainees work for the University in return for compensation. Assuming without deciding that the Board's interpretation of the term employee under the SELRA is correct, the Board unreasonably applied this definition to the employee

6

status of predoctoral fellows and trainees in this case, and thus we must reverse and remand for further proceedings.

¶ 15.    The Board summarily concluded predoctoral fellows and trainees are employees. However, the Board made no findings to support its conclusion that predoctoral fellows and trainees work for the University. While the Board found some predoctoral fellows and trainees had to adhere to the requirements of their specific programs in order to receive funding, it did not find any of these requirements involved work for the University. Rather, its findings indicate that any requirements predoctoral fellows and trainees may have, at least those beyond academic requirements, are those related to professional development and training and internships outside of the University or other academic institutions.

¶ 16.    Petitioner suggests that even though the work of predoctoral fellows and trainees takes place outside of academia, the University still benefits from the services of predoctoral fellows and trainees, citing to the dean of the graduate college's testimony that the University receives grant money. Yet the Board neither made findings to this effect nor based its decision on this ground. See LaFountain v. Dep't of Labor, 2018 VT 31, ¶ 9 n.1, 207 Vt. 120, 186 A.3d 613 (rejecting argument because Employment Security Board "did not make any findings to th[at] effect, and it did not base its decision on [that] ground").

¶ 17.    Petitioner also argues the "right to control" test supports the Board's conclusion that predoctoral fellows and trainees are employees under the SELRA. "In the context of tort cases, we have relied upon the common law 'right to control' test to determine whether a worker is an employee or an independent contractor." Kuligoski v. Rapoza, 2018 VT 14, ¶ 14, 207 Vt. 43, 183 A.3d 1145. "Under that test, a worker is an employee if the party for whom work is being done may prescribe not only what the result shall be, but also may direct the means and methods by which the other shall do the work." Id. ¶ 15 (alteration and quotation omitted). We

7

also look to factors set forth in § 220 of the Restatement (Second) of Agency "to help analyze the nature of the employment relationship" when the right to control test "does not clearly answer the question." Id. ¶ 16 (quotation omitted). These factors, "in addition to the extent of control" include:

> whether the worker is engaged in a distinct occupation, whether the kind of occupation engaged in is usually done under the direction of an employer, the skill required, whether the worker supplies the tools for the work, the length of time the worker is employed, whether payment is by time or by the job, whether the work is part of the regular business of the principal, whether the parties believe they are creating an employer-employee relationship, and whether the principal is or is not in business.

Id. (quotation omitted). However, the Board neither applied this test nor based its decision on these grounds. See Favreau v. Dep't of Emp. & Training, 156 Vt. 572, 575 n.*, 594 A.2d 440, 442 n.* (1991) ("As the [Employment Security] Board did not base its decision on th[e] ground [advanced by the appeals referee], the issue is not before us."). The Board concluded that predoctoral fellows and trainees are supervised and monitored in performance of their efforts but made no findings as to the levels of supervision or whether the University has control over how and when the predoctoral fellows and trainees achieve compliance with their programs.

¶ 18. The Board's sparse findings and conclusion regarding predoctoral fellows and trainees stand in sharp contrast to its extensive findings about graduate assistants. In addition to the findings recited above, the Board found the graduate college oversees graduate assistant positions. Graduate assistants are "on contract" and are expected to answer business-related emails and be available for business-related events. The graduate college approves contracts between the University and graduate assistants ensuring the assistants receive healthcare, training, and the minimum stipend amount. Graduate teaching and research assistants received a minimum stipend of $32,000 for a twelve-month appointment in 2024. The stipend is awarded

8

through the University's payroll system on a semi-monthly basis and the University reports these wages on W-2s.

¶ 19. The University sends an appointment letter to graduate assistants which distinguishes between academic work and graduate assistant work. The appointment letters indicate the stipend amount, expected weekly hour requirement, job duties, and other terms of employment. Supervisors assign work to the graduate assistants. Graduate assistants may be disciplined or terminated if they fail to meet performance expectations. This discipline is separate from any academic discipline. The University also labels graduate assistants as employees throughout various documents and student handbooks.

¶ 20. Students who were graduate teaching assistants were required to spend twenty hours per week teaching classes and lab sections, grading exams, maintaining office hours, and supporting the class instructor, who supervised them in their efforts. Research assistants perform research assignments at the direction of their supervisor. They were not permitted to use this research towards their individual studies; the research furthered the goals of the principal investigator and the University. Graduate assistants may also be required to engage in other University events.

¶ 21. The Board concluded that graduate assistants are employees because they work for the University in exchange for compensation. The Board's decision was based on its findings that graduate teaching assistants are expected to engage in twenty hours of effort per week including grading papers, teaching classes and leading lab sections at the University, and supporting the class instructor. They are required to hold office hours and review sessions. Research assistants also must work twenty hours per week and produce deliverables for their supervisors in the University's laboratories on research that is not directly related to their individual academic interests. The tasks required of graduate assistants serve the University and

undergraduate students and "contribute to the success of those students."  The Board also noted that one graduate teaching assistant must "confer with his course coordinator about the direction of the mathematics classes he teaches."  In exchange for and contingent upon these efforts, the University compensates graduate assistants in the form of a paycheck through the University's payroll system.  Finally, the University had declared in its own documents that graduate teaching and research assistants are University employees.

¶ 22.    The Board made no such findings with regard to predoctoral fellows and trainees, and its conclusory statement that these individuals work for the University begs the question.  It does not necessarily follow that predoctoral fellows and trainees fit the Board's definition of employee under the same reasoning as graduate assistants just because they were all included in the same proposed bargaining unit.  The Board's decision fails to address its own findings that predoctoral fellows and trainees apparently have no obligations to the University beyond academic requirements, do not receive W-2s, or that the funding for predoctoral fellows is tied to the individual student.  It also fails to address the lack of findings that the University internally labels predoctoral fellows and trainees as employees, that the required tasks of predoctoral fellows and trainees serve or benefit the University or students at the University, or that predoctoral fellows and trainees may be disciplined by the University for failure to comply with program requirements.

¶ 23.    It is not clear that predoctoral fellows and trainees fall under the Board's definition of employee based on the record and findings available to us in this appeal.  Without such findings or more detailed reasoning supplied by the Board as to why these differences between graduate assistants and predoctoral fellows and trainees are immaterial to the outcome, we can only "speculate" as to how the Board reached its decision.  Page v. Smith-Gates Corp, 143 Vt. 280, 283, 465 A.2d 1102, 1104 (1983) (quotation omitted) ("Nor is it clear how the final

10

decision . . . was reached."); <u>Roy v. Town of Barnet</u>, 147 Vt. 551, 552, 522 A.2d 525, 526 (1986) ("Although we may be able to determine what was decided, we are unable to conclude how the [State Board of Appraisers] arrived at its decision."). That we will not do. See <u>Saufroy v. Town of Danville</u>, 148 Vt. 624, 626, 538 A.2d 168, 169 (1987). We thus must remand to the Board to consider these issues in the first instance. Accordingly, the Board's order with respect to the employee status of predoctoral fellows and trainees is reversed and the matter is remanded to the Board for further proceedings consistent with this opinion.

<u>Reversed and remanded for further proceedings consistent with this opinion</u>.

FOR THE COURT:

_____

Associate Justice